AMERICAN MATINEE ASS'N *v.* SECRETARY OF STATE.

1. Corporations—Purpose of Incorporation—Statutory Provisions.

　A corporation, organized for the purpose of improving the breed of horses by promoting the interests of the American trotting turf, without provision for a capital stock nor for acquiring any money or property, except from membership fees and annual dues, is not organized for pecuniary profit, and has no capital, and comes within Act No. 171, Pub. Acts 1903, providing for the incorporation of associations not for pecuniary profit.

2. Statutes—Title—Subjects Included.

　The title of Act No. 171 of the Public Acts of 1903, entitled "An act for the incorporation of associations not for pecuniary profit," is sufficiently comprehensive to include a provision that hereafter all new corporations not organized for profit, and having no capital stock, except religious organizations, shall be organized under the act.

Mandamus by the American Matinee Association to compel George A. Prescott, secretary of State, to receive and file certain articles of association under chapter 158 of the Compiled Laws of 1897. Submitted May 12, 1905, (Calendar No. 21,067½.) Writ denied June 29, 1905.

*Fred A. Baker*, for relator.

*John E. Bird*, Attorney General (*S. A. Kennedy*, of counsel), for respondent.

Moore, C. J. The relator tendered to the secretary of State for record articles of association, under Act No. 18 of the Public Acts of 1887, to incorporate an organization bearing the name "American Matinee Association." The purpose of the corporation, as stated in the articles, is "for the purpose of improving the breed of horses by promoting the interests of the American trotting turf."

The terms and conditions of membership are stated as follows:

"Any individual, corporation, partnership, voluntary association, or any State, county or town, agricultural society organized under the laws of this State, or of any other State, or the Dominion of Canada, may become and remain a member by paying such membership fees and annual dues as shall be fixed and determined from time to time by the by-laws of the association."

The articles of association contain no provision for a capital stock, nor for the carrying on of any business, nor for the acquiring of any money or property, except membership fees and annual dues from members. The secretary of State concluded the organization was "a new corporation, not organized for profit, and having no capital stock," and that it is not a religious organization, that it came within an act entitled "An act for the incorporation of associations not for pecuniary profit," section 7 of which reads: "Hereafter all new corporations not organized for profit and having no capital stock, except religious organizations, shall be organized under this act." See Act No. 171, Pub. Acts 1903. He refused to file the articles of association. This is an application for a writ of mandamus to compel him to do so. Relator claims:

"The act of March 1, 1887, is not within section 7 of the act of June 2, 1903; that it only applies to corporations 'not organized for profit and having no capital stock.' Corporations organized under the act of March 1, 1887, may have a capital stock or a membership. If organized with a membership, they can amend their articles and provide for a capital stock. * * *

"In other words, corporations that are authorized to have a capital stock are corporations organized for pecuniary profit. At all events, it cannot be said that they are corporations 'not organized for profit,' so as to bring the acts under which they may be organized within section 7."

We quote from brief of attorney general:

"In reply to this, respondent insists that if such corporations are organized for profit and have a capital stock,

within the meaning of section 7 of Act No. 171 and are therefore not included in Act No. 171, then they are expressly included in Act No. 232, Pub. Acts 1903, section 1 of which includes corporations for buying, selling, and breeding cattle, sheep, horses, and other live stock, and section 37 of which declares that it shall 'include and apply to all corporations provided for in the following statutes: Chapter one hundred and fifty-eight [and others], 2 Comp. Laws, and shall repeal all other acts and parts of acts inconsistent with the provisions of this act.'

"If it be said that the corporation in question is not included in the language just quoted—that it is not a corporation for buying, selling, and breeding horses and other live stock—we reply that it is organized under chapter 158, and states its purpose to be to improve the breed of horses. Hence, if it is a corporation for profit, and has a capital stock, it is subject to Act No. 232.

"There is no inconsistency in saying that a corporation for the improvement of the breed of horses may be a corporation not for profit and having no capital stock, and hence subject to Act No. 171, or it may be a corporation primarily for profit, and having a capital stock, as provided in Act No. 232, and be subject to, and organized under, Act No. 232.

"The question as to whether it should organize under Act No. 171 or under Act No. 232 must be determined by the objects and purposes shown by the articles of association.

"If the articles show that it is a corporation not for profit, it should organize under Act No. 171; but, if they show that it is organized primarily for pecuniary profit to the stockholders, it should organize under Act No. 232."

For the purposes of this case, the object of the association may be gathered from its articles. *Attorney General* v. *Lorman*, 59 Mich. 157; *Detroit Driving Club* v. *Fitzgerald*, 109 Mich. 670. Its object is stated to be " for the purpose of improving the breed of horses by promoting the interests of the American trotting turf." There is no provision for a capital stock, nor for the acquiring of any money or property, except from membership fees and annual dues. We think this indicates very clearly not only that the proposed corporation had no capital stock,

but that it was not organized for pecuniary profit, and comes within the provision of Act No. 171, Pub. Acts 1903.

Counsel further contends:

"So far as section 7 of the act of June 2, 1903, purports or may be construed to amend, modify, or repeal the act of March 1, 1887, it is not within the title of the act of June 2, 1903, and is unconstitutional and void."

We have already quoted the title of the act and the provisions of section 7. We think nothing in the latter is incongruous with the former. It is competent to provide in the body of an act entitled "An act for the incorporation of" certain corporations (naming them) that after the act becomes a law all new corporations of that kind shall be organized under the provisions of the act. See Cooley on Constitutional Limitations (6th Ed.), 172; *People* v. *Mahaney,* 13 Mich. 481; *Soukup* v. *Van Dyke,* 109 Mich. 679; *Grimm* v. *Secretary of State,* 137 Mich. 134, and the cases cited therein.

Having reached this conclusion, we deem it unnecessary to discuss the other questions raised by counsel.

The writ is denied.

CARPENTER, MCALVAY, GRANT, and BLAIR, JJ., concurred.