JACKSON, LANSING & SAGINAW RAILROAD CO. *v.* SOLOMON
LUMBER CO.

1. TAXATION — STATE TAX HOMESTEAD LANDS — DETERMINATION—
   RIGHT TO ATTACK—LIMITATIONS.
   Where lands have been bid in for the State for delinquent taxes,
   and the auditor general and commissioner of the State land
   office have filed their determination under the statute (sec
   tion 127, Act 206, Pub. Acts 1893, as amended by Act 107,
   Pub. Acts 1899) relating to abandoned lands, and more than
   six months have passed after such determination before any
   proceedings are begun to review it, so that the original owner
   is barred by limitations from making a direct attack thereon,
   he cannot call it in question in an action of replevin to recover
   timber cut from the land by a purchaser from the State.

2. SAME—CERTIFICATE OF ERROR—EFFECT.
   After the determination by the auditor general and commis-
   sioner of the State land office that lands are abandoned within
   the meaning · of section 127, Act 206, Pub. Acts 1893, as
   amended by Act 107, Pub. Acts 1899, the auditor general has
   no further control over the lands, and his certificate of error
   issued thereafter is a mere nullity.

3. SAME—REDEMPTION—RECEIPT OF MONEY—ESTOPPEL OF STATE.
   Receipt by the auditor general of money to redeem lands sold
   for delinquent taxes, after the lands have passed out of con-
   trol of the auditor general by reason of the filing of the deter-
   mination by him and the commissioner of the State land
   office that the lands are abandoned, can have no effect to
   support an estoppel against the State or in any way affect its
   rights.

4. SAME—DEEDS—EFFECT OF IRREGULARITIES.
   The title of the State to abandoned State tax lands becomes ab-
   solute by the filing by the auditor general and commissioner
   of the State land office of the determination that they are
   abandoned, and the fact that the auditor general, in performing
   the ministerial act of executing the deed to evidence the title,
   deeds the land to the State by forties, instead of as an entire
   tract, as it was assessed, is immaterial.

Error to Iosco; Connine, J.   Submitted June 12, 1906.
(Docket No. 89.)   Decided October 29, 1906.

Replevin by the Jackson, Lansing & Saginaw Railroad Company against the Solomon Lumber Company. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*George L. Alexander*, for appellant.

*Ward B. Connine*, for appellee.

BLAIR, J. This is an action of replevin brought to recover possession of a quantity of saw logs. The right to the possession of the logs depends upon the ownership of the lands upon which they were cut, described as the N. ½ S. W. ¼ section 1, town 25 N., range 1 W. The original title to the lands was conveyed to plaintiff by United States patent, May 8, 1873. Plaintiff failed to pay its taxes, and the entire section was returned as delinquent, sold and bid in to the State for the taxes assessed thereon in the years 1892 to 1900, inclusive. On September 23, 1902, the auditor general and the commissioner of the State land office filed their certificate of determination in the usual form, determining that the lands in question, among others, came "within the provisions of section 127 of Act No. 206 of the Public Acts of 1893, as amended by Act No. 107 of the Public Acts of 1899." This determination was based in part upon the certificate of an examiner as to the character of the lands, etc., dated December 7, 1901, and of the county clerk, that there were no actions pending, dated January 18, 1902. On November 8, 1902, the auditor general executed a deed to the State, reciting the proceedings culminating in the determination of September 23, 1902, of the following described lands: S. E. ¼ N. W. ¼ section 1, containing 40 acres, more or less; N. E. ¼ S. W. ¼ section 1, containing 40 acres, more or less; N. W. ¼ S. W. ¼ section 1, containing 40 acres, more or less; S. W. ¼ S. W. ¼ section 1, containing 40 acres, more or less—town 25 N., range 1 W. On November 20, 1902, the auditor general and the land commissioner withdrew the lands in question from

homestead entry, pursuant to Act No. 141, Pub. Acts 1901, and on January 24, 1903, gave notice of sale to be held on March 5, 1903. August 31, 1903, the land commissioner executed a deed to William Deeter of the N. W. ¼ S. W. ¼ of said section 1, and on September 2d he deeded the N. E. ¼ S. W. ¼ of said section to Harry Solomon. Deeter and Solomon conveyed their interests to the defendant.

Plaintiff, on the 7th day of November, 1902, wrote to the auditor general, making application to purchase and redeem the land, and inclosed the sum of $585 for such purpose. On November 10, 1902, the auditor general replied, acknowledging receipt of the $585, and saying that "it will require an additional remittance of $145.14, which should be sent immediately as the land is listed to be deeded to the State and will be deeded unless purchased within the next few days." This additional sum of $145.14 was sent to the auditor general on November 12, 1902. On the 14th day of November, 1902, the auditor general, by John F. Wilkinson, his deputy, executed and delivered a conveyance of said land to the plaintiff. October 20, 1903, the deputy auditor general issued a certificate of error against the deed of the auditor general to the State of November 8, 1902, for the reasons following:

"The deed of said described land to the State of Michigan under section 127, Act 206, Pub. Acts 1893, as amended, was erroneously issued, for the reason that the entire section 1 of said town and range was returned delinquent, advertised for tax sale, bid to the State and held subject to purchase, redemption, and payment as one description for all of above years and was erroneously subdivided in said deed to the State of Michigan, also the taxes for all of above years were purchased, redeemed and paid from the auditor general."

The circuit judge directed a verdict in favor of defendant, and plaintiff has removed the record to this court for review on writ of error, contending that verdict should have been directed in its favor.

In the brief for plaintiff counsel say:

"The principal question in this case is as to the legal effect of the proceedings taken by the auditor general and the commissioner of the State land office of this State, terminating in the deed from the auditor general to the State of Michigan conveying to the State of Michigan the lands in contention in this case under what are known as the 'State tax homestead laws.' If these proceedings were not regular and legal and did not divest plaintiff of its title to the lands in question, plaintiff must prevail."

More than six months had elapsed after the determination of the auditor general and the commissioner of the State land office before plaintiff instituted this suit, and since it was barred by the statute of limitations from making a direct attack upon the determination, it plainly could not call it in question in this suit. *Semer* v. *Auditor General*, 133 Mich. 569.

After the determination by the auditor general and the commissioner of the State land office the auditor general had no further control over these lands, and his certificate of error was a mere nullity. *Commissioner of State Land Office* v. *Auditor General*, 131 Mich. 147.

It necessarily follows that the receiving of plaintiff's money by the auditor general, after the determination, could not support an estoppel against the State, or in any way affect its rights.

The fact that the auditor general deeded the lands to the State by forties instead of as one entire description is immaterial. The execution of the deed is a mere ministerial act to evidence the title. *Eldridge* v. *Richmond*, 120 Mich. 586. The title of the State having become absolute by the determination, whether the auditor general deeded the lands by subdivisions or as an entire section did not concern the plaintiff. It is unnecessary to consider other questions, since what we have said disposes of the case.

The judgment is affirmed.

Montgomery, Ostrander, Hooker, and Moore, JJ., concurred.